UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
BRIDGET M. CURRAN, individually, and as                    :
natural Guardian of C.F.C., a minor,                       :
                                                           :
                              Plaintiff,                   :        13-cv-00289 (NSR)
           -against-                                       :        OPINION AND ORDER
                                                           :
AETNA LIFE INSURANCE COMPANY,                              :
TRINET GROUP, INC., and THE TRINET                         :
OPEN  ACCESS MANAGED CHOICE PLAN                           :
                                                           :
                              Defendants.                  :
-----------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

       Plaintiff Bridget M. Curran brings this action on behalf of herself individually and as the

natural guardian of her son, C.F.C., a minor against Defendants Aetna Life Insurance Company

("Aetna"), TriNet Group, Inc. ("TriNet"), and the TriNet Open Access Managed Choice Plan's[1]

(the "Plan") (collectively, "Defendants").  She seeks (1) to recover benefits due under the Plan

pursuant to ERISA Section 502(a)(1)(B); (2) declaratory and injunctive relief and to impose

sanctions on Defendants pursuant to ERISA Section 502(c) for failure to provide documents

pertaining to her claim determination; (3) recover damages for breach of fiduciary duty under

ERISA Section 401(a)(1)(A), (B), and (D) against Aetna pursuant to ERISA Section

502(a)(3)(B); (4) recover damages for breach of fiduciary duty under ERISA Section 405(a)(1),

(2), and (3) against TriNet pursuant to ERISA Section 502(a)(3)(B).

---

[1] TriNet Group, Inc. Section 125, Section 129, and Flexible Spending Account Plan was erroneously sued under the
name TriNet Open Access Managed Choice Plan.  Def. Mem. 1.

Defendants move to dismiss the Second, Third, and Fourth claims in Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part.

## Background

For purposes of this motion, this Court accepts as true the facts as stated in Plaintiff's Amended Complaint.[2]  Bridget M. Curran was a member-participant and an insured under the TriNet Open Access Managed Plan, as was her son, C.F.C., a minor.  Amended Complaint ("Amend. Compl.") ¶1.  The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001, *et seq*. Amended Complaint ¶3.  Aetna is the underwriter, insurer, and agent of the Plan and TriNet is the issuer and administrator of the Plan.  Amend. Compl. ¶4-5.  The Plan terms and coverage information is contained in a Booklet-Certificate, which Plaintiff was provided by TriNet and had possession of at all relevant times.  Amend. Compl. ¶17.  Together with "Additional Information," the Booklet-Certificate constituted the Summary Plan Description ("SPD"). *Id.*

On January 7, 2011, Plaintiff's minor son, C.F.C., underwent scoliosis surgery, which was performed at Stamford Hospital in Stamford, Connecticut by Dr. Rudolph F. Taddonio, an out-of-network health care provider. Amend. Compl. ¶13.  Following the surgery, on January 10, 2011, Dr. Taddonio submitted a Claim Form to Aetna in accordance with the plan's terms to recover payment for the surgical procedure in the amount of $168,500. Amend. Compl. ¶14-15.

---

[2] The Court notes Plaintiff's meticulous documentation of Defendants' use of facts contrary to, or outside of the Amended Complaint in its Motion to Dismiss.  For purposes of deciding this motion, however, the Court accepted as true the facts in Plaintiff's complaint and analyzed whether Plaintiff stated a claim based on those facts only.

At some point in April 2011, and until September 2011, on Aetna's website, it was indicated under its "Claims Listings" that Aetna had approved a payment of $119,658.42 for the scoliosis surgery performed in January 2011 and that such amount was to be "Paid by Plan." Amend. Compl. ¶19. In fact, Dr. Taddonio did not receive that payment and ultimately, received a total payment of $4,443.99 from Aetna, which was made in two installments - $2,988.70 was paid on March 10, 2011 and $1,455.29 was paid on December 26, 2011. Amend. Compl. ¶22. On May 31, 2011, Aetna notified Plaintiff by letter that it had made an error in approving the payment of $119,658.42 and that it had assigned a new case number to the claim. Amend. Compl. ¶23.

Beginning on April 7, 2011, Plaintiff submitted letters to both Aetna and TriNet requesting specific documents relating to the approval and subsequent rescission of the $119,658.42 payment, referencing specific Department of Labor Regulations enacted pursuant to ERISA which require production of certain documents. Amend. Compl. ¶33. Through counsel, Plaintiff sent letters to Aetna on April 7, 2011, July 7, 2011, September 26, 2011, October 28, 2011, November 15, 2011, November 28, 2011, and January 7, 2012 and to TriNet on March 9, 2012 and May 22, 2012. *Id.* The letters sent to TriNet also requested specific documentation with regard to the adverse determination of the claim. Amend. Compl. ¶36. TriNet's response, on July 16, 2012, indicated that TriNet was not the claims fiduciary and that it had delegated all claims administration to Aetna, its insurance carrier. Amend. Compl. ¶42; Declaration of Helen Hong Ex. D CURRAN-TRINET000041. To date, Plaintiff has received none of the requested documents pertaining to the adverse claim determination. Amend. Compl. ¶42.

On January 14, 2013, Plaintiff filed a Complaint against Aetna, TriNet, and the Plan. Plaintiff filed an Amended Complaint on August 2, 2013.

3

**Discussion**

**A. Legal Standard**

    **a. Motion to Dismiss Under Rule 12(b)(6)**

    On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). Dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

    When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations of a complaint need not be detailed, but they must be sufficient to "nud[ge] . . . claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570—in other words, to raise a potential entitlement to relief beyond the "speculative level." *Id.* at 555. Thus, a pleading that merely offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* Ultimately, determining whether a complaint states a facially

4

plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### b. Materials Considered on Motion to Dismiss

On a motion to dismiss, the court may consider the documents that are "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n. 2 (S.D.N.Y. 2012). "Specifically in the ERISA context, '[b]ecause the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss.'" *Faber v. Metropolitan Life Ins. Co.*, No. 08-cv-10588, 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009) (quoting *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005)).

## B. Plaintiffs' Second Claim

### a. Statutory Penalties

Defendants move to dismiss Plaintiff's Second Claim, which seeks injunctive and declaratory relief as well as statutory penalties under ERISA §502(c) against all Defendants for failure to adequately respond to Plaintiff's' requests for documents and information pertaining to Plaintiff's claim for coverage. Def. Mem. 3. Plaintiff seeks statutory penalties against TriNet, the Plan Administrator, Aetna, the insurer and agent of the Plan, and the Plan itself. Amend. Compl. ¶30. ERISA §502(c) provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. §1132(c).  The text of the statute makes it clear that sanctions under §1332(c) may be imposed only against a plan *administrator* and only for refusal to supply information *required* by the relevant *subchapter* of ERISA.

Under ERISA, the plan administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. §1002(16)(A).  The statute clearly provides that only the plan administrator is subject to statutory penalties under ERISA §502(c).  *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) ("[S]ince Oxford is not [designated as plan administrator], it is not a plan 'administrator' within the meaning of ERISA § 502(c)(1) []. [Plaintiffs] therefore cannot recover statutory damages under that provision of ERISA for Oxford's nondisclosure of certain information."); *see also Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 135 (2d Cir. 2001) ("By its terms, ERISA allows for civil penalties only if an administrator has refused to comply with a request for information." (internal citation omitted)).  Here, the plan instrument, the SPD, designates TriNet as the Plan Administrator, [3] and therefore, only TriNet is subject to statutory damages under ERISA § 502(c).  Statutory penalties may not be imposed upon non-administrators Aetna and the Plan.

---

[3] Both Plaintiff and Defendant accept this statement as fact. Plaintiff Amend. Compl. ¶4; Opp'n p. 10; Def. Mem. 10

Plaintiffs assert, however, that although Aetna is the insurance carrier and not the designated administrator, Aetna held itself out as the plan administrator and therefore should be considered the *de facto* plan administrator.  Both the First Circuit and the Eleventh Circuit have held that an entity that is not specifically designated the administrator by the plan document may nonetheless be held liable for ERISA violations if the circumstances suggest that it is acting as the plan administrator.  *Rosen v. TRW, Inc.*, 979 F.2d 191, 193-94 (11th Cir. 1992) ("if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document."); *Law v. Ernst & Young*, 956 F.2d 364, 372 (1st Cir. 1992) ("where an entity of which the administrator is part in effect holds itself out as the plan administrator by officially disseminating such information, we think it is subject to §1132(c) liability should it fail to discharge that role in a proper way.").  The Second Circuit, in addressing *Rosen v. TRW, Inc.* and *Law v. Ernst & Young*, stated as follows:

> Some courts have held that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description. [citing *Law* and *Rosen*].  We disagree. "Respect for our proper role requires that we decline . . . to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the administrator."

*Lee v. Burkhart*, 991 F.2d 1004, 1010 n. 5 (2d Cir. 1993) (citing *Davis v. Liberty Mut. Ins. Co*, 871 F.2d 1134, 1138 n. 5); *see also McKinsey v. Sentry Insurance*, 986 F.2d 401 (10th Cir.1993) (disagreeing with *Law v. Ernst & Young*).  Although there is some disagreement, the majority of courts in this circuit have applied the same principal to non-designated administrator defendants, and held that only designated administrators may be defendants for purposes of actions under ERISA § 502(a)(1)(B).  *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, No. 13 Civ. 1599 CM, 2013 WL 5878897, at *7 (S.D.N.Y. Oct. 31, 2013) (listing cases rejecting the notion that an entity may be held liable for benefits § 502(a)(1)(B) under as a "de facto"

administrator); *Del Greco v. CVS Corp.*, 354 F. Supp. 2d 381, 384 (S.D.N.Y. 2005) ("An entity that provides services to a plan does not become a de facto plan administrator liable under ERISA[.]").  This Court sees no reason to distinguish § 502(a)(1)(B) liability from § 502(c) sanctions for purposes of whether an entity could be held as a *de facto* administrator.  Thus, since courts have refused to apply a de facto test for administrators under ERISA, Aetna cannot be a *de facto* administrator and sanctions under § 502(c) cannot be levied against it.

The second criterion for sanctions under § 502(c) is that the information the plan administrator refuses to furnish is that information specifically "required by this subchapter." 29 U.S.C. §1132(c). "The subchapter referred to is Subchapter I of Title 18, entitled 'Protection of Employee Benefit Rights,' which includes Subtitle A, General Provisions, and Subtitle B, Regulatory Provisions, and encompasses sections 1001 through 1191c." *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180SASDFE, 2005 WL 1309056, at *2 (S.D.N.Y. May 31, 2005).  Defendants claim that the only requirement to provide information for purposes of section 502(c) lies in Section 104(b)(4) of ERISA, which imposes an obligation on the Plan Administrator, upon request, to provide the Summary Plan Description to any participant or beneficiary.  29 U.S.C. § 1024(b)(4) ("The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." (internal footnote omitted)).  Plaintiff never specifically requested a copy of the SPD because Plaintiff was in possession of the SPD at all times. Amend. Compl. ¶17.  Thus, sanctions under § 502(c) cannot be predicated on the failure to provide Plaintiff the SPD.

8

Plaintiffs identify a provision in the Plan's SPD entitled "Enforce Your Rights" which allows for the beneficiary to request documentation relating to the denial of a claim.[4]  Plaintiffs allege that this provision is consistent with, and an implementation of ERISA §§ 503, 505, and 502(c), and the failure to comply with it should expose Defendants to § 502(c) liability.  Section 505 of ERISA gives the Secretary of Labor discretion to implement regulations necessary to carry out the provisions of the subchapter.[5]  Plaintiff claims that Defendants failed to follow certain Regulations that require the production of documents relating to adverse claim determinations.  To the extent Plaintiff is relying on the Department of Labor Regulations implemented pursuant to section 505, 29 U.S.C. §1135, Plaintiff's requested relief of sanctions must fail.  Plaintiff relies in part on 29 C.F.R. § 2560.503-1, which imposes duties on both the plan and the plan administrator.  29 C.F.R. § 2560.503-1(h) applies to plans:

> Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

29 C.F.R. §2560.503-1(h)(1).  The Regulation further provides that a review will not be full and fair unless the plan participant is provided with "reasonable access to, and copies of, all

---

[4] This provision states, "If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.  Under ERISA there are steps to take to enforce the above rights.  For instance, if you request materials from the Plan and do not receive them within 30 days you may file suit in a federal court.  In such a case, the court may require the Plan Administrator to provide the materials and pay up to $110 a day until you receive the materials . . ." Gallion Decl. Ex. A CURRAN-AETNA000183.

[5] The full text of §505 is as follows: "Subject to subchapter II of this chapter and section 1029 of this title, the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter. Among other things, such regulations may define accounting, technical and trade terms used in such provisions; may prescribe forms; and may provide for the keeping of books and records, and for the inspection of such books and records (subject to section 1134(a) and (b) of this title)." 29 U.S.C. §1135.

documents, records, and other information relevant to the claimant's claim for benefits." 29

C.F.R. §2560.503-1(h)(2)(iii).  Where there is an adverse determination, the plan administrator is

required to provide certain documents under 29 C.F.R. §2560.503-1(f):

> The plan administrator shall provide a claimant with written or electronic notification of a plan's benefit determination on review . . . . In the case of an adverse benefit determination, the notification shall set forth, in a manner calculated to be understood by the claimant-
>
> (1) The specific reason or reasons for the adverse determination;
>
> (2) Reference to the specific plan provisions on which the benefit determination is based;
>
> (3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

29 C.F.R. §2560.503-1(f).  Plaintiff looks to these regulations as a basis for imposing statutory

penalties under ERISA upon TriNet and Aetna.  However, the language of ERISA § 502(c)

clearly states that statutory penalties are to be imposed only for failure to provide information as

required under Subchapter I of ERISA.  This court has followed the precedent of both the Third

and Seventh Circuits in holding that "statutory penalties may not be assessed against the Plan

Administrator under 29 U.S.C. § 1132(c)(1) for violations of ERISA's implementing

regulations." *Mohamed v. Sanofi-Aventis Pharmaceuticals*, No. 06 Civ. 1504, 2009 WL

4975260, at *21 (S.D.N.Y. Dec. 22, 2009) (following the holdings of the Third Circuit case

*Groves v. Modified Retirement Plan*, 803 F.2d 109, 113 (3d Cir.1986) and the Seventh Circuit

case *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir.1996)); *accord Gates v.*

*United Health Group Inc.,* No. 11 Civ. 3487(KBF), 2012 WL 2953050, at *12 n. 15 (S.D.N.Y.

July 16, 2012) ("Plaintiff, however, cannot state a claim for statutory penalties against the plan

administrator based on the Plan's alleged failure to provide requested information in violation of

ERISA Section 503."); *Anderson*, 2005 WL 1309056, at *4 ("[A] violation of ERISA's implementing regulations cannot support the imposition of sanctions under section 1132, regardless of whether the implementing regulations place the burden of disclosure on the plan or the plan administrator.").  Plaintiff's reliance on *Juliano v. The Health Maintenance Org. of New Jersey, Inc.*, 221 F.3d 279 (2d Cir. 2000) on this point is misplaced because in that case, the court was not dealing with imposing sanctions for failure to comply with 29 C.F.R. § 2560.503–1(f) and 29 C.F.R. § 2560.503–1(g), but only that Plaintiff was entitled to notice of the reasons for the denial of the benefit.  Here, the Court determines only that failure to follow the Department of Labor Regulations does not subject an entity to sanctions under ERISA § 502(c).

Plaintiff also refers to obligations under § 503 of ERISA, which states,

> Every employee benefit plan shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1)-(2).  This section requires the release of information by the plan, and not the plan administrator, and therefore the plan administrator cannot be subject to sanctions for failure to provide information under Section 503. *See New York Psychiatric Ass'n v. UnitedHealth Group*, No. 13 Civ. 1599 CM, 2013 WL 5878897, at *18 (S.D.N.Y. Oct. 31, 2013) ("ERISA § 503 imposes obligations only upon the employee benefits plans themselves."); *Gates*, 2012 WL 2953050, at *6 ("Section 503 explicitly imposes obligations only upon employee benefit plans. Numerous courts have ruled that such section does not create liability for administrators . . . ." (internal citations and alterations omitted)); *American Medical Ass'n v. United Healthcare Corp.*, No. 00Civ.2800(LMM)(GWG), 2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002) ("The Court now

holds that § 503 is inapplicable to a plan administrator."). Accordingly, Plaintiffs' requested relief for sanctions under ERISA § 502(c) against Defendants TriNet and Aetna cannot be predicated on a violation of Section 503. Although Section 503 imposes an obligation on the plan, sanctions under section 502(c) only provide for penalties against the plan administrator and therefore, cannot be imposed against the plan for failure to comply with section 503. Simply put, sanctions under section 502(c) are not a remedy for violations of section 503.

### b. Declaratory & Injunctive (Mandamus) Relief

Plaintiff's Amended Complaint also seeks injunctive and declaratory relief under its Second Claim compelling Defendants to respond to Plaintiff's requests for documents relating to Plaintiff's claim for coverage under the Plan. Defendant's motion to dismiss does not address the mandamus relief. Therefore, although the Court is granting Defendants' motion to dismiss the Second Claim seeking statutory penalties, the Second Claim is not dismissed with respect to the requested declaratory and injunctive relief.

## C. Plaintiff's Third Claim

Plaintiff's third claim against Aetna alleges breach of fiduciary duty under ERISA §404(a)(1). Section 404(a)(1) states, "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan. . . ." 29 U.S.C. § 1104(a). Plaintiff alleges that Aetna did not act solely in the interest of Plaintiff, a Plan beneficiary, because it served as both an insurer and fiduciary under the Plan and the actions it took were out of self-interest and not in accordance with Plaintiff's best interests. Amend. Compl. ¶58-59. Plaintiff's Amended Complaint seeks "compensatory damages" for Aetna's alleged breach of fiduciary duty in the amount of

12

$168,500.  Plaintiff insists this claim is separate and apart from her first claim for recovery of benefits under § 502(a)(1)(B) because the denial of Plaintiff's claim resulted in an outstanding bill from Dr. Taddonio of $168,500, whereas if Aetna had approved the payment of $119,658.42, Dr. Taddonio would have accepted that amount as payment in full for his services.  Plaintiff asserts that were it not for Aetna's alleged breach of fiduciary duties, she would not have an outstanding bill from Dr. Taddonio for $168,500.  Plaintiff concedes in her Opposition that should she prevail on her first claim and recover $119,658.42, that amount would not be recoverable under her Third Claim.

The enforcement mechanism Plaintiff pursues is ERISA § 502(a)(3), which states, in relevant part, that "[a] civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3) (emphasis supplied).   "We have interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to 'those categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity) 'were typically available in equity.'" *CIGNA Corp. v. Amara*, — U.S. —, 131 S.Ct. 1866, 1878 (2011) (quoting *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 361 (2006)). Section 502(a)(3) acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).[6]

---

[6] Note that the second subsection of 502(a) provides an avenue for a civil suit by a plan beneficiary for "appropriate relief under section 409 [entitled 'Liability for Breach of Fiduciary Duties']." 29 U.S.C. § 1132(a)(2).  However, recovery under section 409 accrues to the plan, and not to the individual beneficiary.  29 U.S.C. § 1109 ("Any

Plaintiff bases her claim on the same set of facts as her first claim for recovery of plan benefits – namely, that Aetna erred in rescinding its first determination for payment of $119,658.42 and subsequently approving a lesser payment that totaled $4,443.99 to Dr. Taddonio.  The relief that Plaintiff seeks is monetary in nature and not equitable as anticipated by § 502(a)(3).  *See Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112, 119 (2d Cir. 2009) ("Furthermore, § 1132(a)(3) only applies to claims for injunctive relief, and despite [Plaintiff's] assertions to the contrary, many of [Plaintiff's] claims are effectively claims for money damages outside the scope of § 1132(a)(3)."); *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006) ("The district court's starting premise is correct: suits may be brought under § 502(a)(3) only for those categories of relief that were typically available in equity, and classic compensatory damages are never included within these categories.") (internal citations and alterations omitted); *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available.");  *Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503, 515 (S.D.N.Y. 2006) ("[Plaintiff] does not allege facts and conduct with respect to his fiduciary duty claim that are in any way different from the allegations supporting his other ERISA causes of actions. Consequently, the Court finds

---

person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . .").  Further, the court in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) held that section 409 did not "authorize the plaintiff's suit for compensatory and punitive damages against an administrator who had wrongfully delayed payment of her benefit claim." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

14

in this action there is no 'appropriate equitable relief' necessary to remedy the harm alleged that is not adequately addressed by the relief available under § 502(a)(1)(B).").

In *CIGNA Corp. v. Amara*, on which Plaintiff relies, the Supreme Court was faced with a dispute regarding the failure to properly disclose information between an employer and beneficiaries of a pension plan that had been converted to a "cash balance" retirement plan. *CIGNA*, 131 S.Ct. at 1870. The Court found that ERISA § 502(a)(3) instead of  § 502(a)(1)(B) gave the District Court authority to reform the terms of the plan and enforce the new terms of the plan, which included the payment of money owed already retired beneficiaries. *Id*. at 1880. Although "this relief takes the form of a money payment, [that fact] does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id*.  The circumstances here are distinguishable from *CIGNA* in a critical way.  The equitable relief granted by the District Court under *CIGNA* was the reformation of the plan documents, the result of which was the award of monetary payment. Plaintiff here seeks monetary damages that essentially derive from the claim determination, which is based on the terms of the Plan documents.  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005) ("We decline this invitation to perceive equitable clothing where the requested relief is nakedly contractual.").

Plaintiff asserts that she is not seeking contractual-based rights but, instead, is seeking damages flowing directly from Aetna's alleged self-dealing.  In *Devlin v. Empire Blue Cross & Blue Shield*, the Second Circuit noted that "should plaintiffs' claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of

15

fiduciary duty claim is their only remaining remedy. *Varity Corp.* clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § 502(a)(3)." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001).  However, plaintiffs in *Varity* were left with no other remedy under ERISA, specifically for recovery of benefits under § 502(a)(1)(B) because they were no longer plan beneficiaries.  *Varity*, 516 U.S. at 515.  *Varity* made clear that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id* at 515. Plaintiff's First Claim, which is not subject to Defendants motion to dismiss, is for recovery of benefits under § 502(a)(1)(B), and thus Plaintiff is left with a potential remedy under ERISA. Plaintiff's argument for breach of fiduciary duties is that Aetna was in a conflict of interest position by determining the "recognized charge" for the surgery as $119,658.42 and then rescinding that determination in favor of a lower payment of $4,443.99.  This claim is essentially that Aetna erred in its claim determination.  Because it is essentially duplicative of her First Claim, and because there is other relief available for this claim under the statute other than the equitable relief available under § 502(a)(3), Plaintiff's Third Claim should be dismissed.  *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006) ("We believe, however, that Wilkins's claim may be understood not as a claim for equitable relief under § 502(a)(3), but as a claim to recover plan benefits under § 502(a)(1)(B)."); *Levin v. Credit Suisse, Inc.*, No. 11-cv-5252(RJS), 2013 WL 1296312, at *3 (S.D.N.Y. Mar. 19, 2013) ("Claim 1 [for breach of fiduciary duty] fails because it is duplicative of Claim 5 [for arbitrary & capricious denial of benefits under ERISA § 502(a)(1)(B)]. Claim 1 alleges that MetLife breached its fiduciary duty by denying [Plaintiff's] application for his [LD] benefits without undertaking a

responsible investigation.  Claim 5 alleges that MetLife arbitrarily and capriciously denied his

benefits. Because these claims are coextensive, dismissal of Claim 1 as against MetLife is

appropriate." (internal quotations and citations omitted)).

## D.  Plaintiff's Fourth Claim

Plaintiff's Fourth claim seeks compensatory damages against TriNet for breach of

fiduciary duty under ERISA § 405(a)(1), (2) & (3), pursuant to ERISA § 502(a)(3)(B).  Plaintiff

alleges that she put TriNet on notice that Aetna was violating its fiduciary duties in a letter to

TriNet's counsel and TriNet failed to take any action to remedy such violation.  Under ERISA §

405(a), one fiduciary can be held liable for a breach of fiduciary duty by another fiduciary:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §1005(a)(1)-(3).  Plaintiff seeks relief through the same provision of ERISA as its

fiduciary claim against Aetna, section 502(a)(3)(B).  For the same reasons as stated above in

Section C in dismissing the Third Claim against Aetna, the claim against TriNet must fail.

Plaintiff seeks a monetary remedy amounting to $168,500, which Plaintiff claims is the amount

that it was damaged due to TriNet's failure to appropriately prevent or remedy Aetna's alleged

breach.  As stated *supra* in Section C, compensatory damages are not the type of "equitable

relief" anticipated by the statute, and there is no "appropriate equitable relief" alleged that cannot

be adequately remedied by § 502(a)(1)(B).  *Varity*, 516 U.S. at 515.  Accordingly, Plaintiff's

Fourth Claim is dismissed.

**Conclusion**

For the foregoing reasons, the Court grants Defendants motion to dismiss Plaintiff's

Second Claim as against all Defendants only with respect to the statutory penalties sought under

ERISA § 502(c).  With respect to the requested injunctive and declaratory relief, Plaintiff's

Second Claim is not disturbed.  The Court GRANTS Defendants' motion to dismiss Plaintiff's

Third Claim against Defendant Aetna and Plaintiff's Fourth Claims against Defendant TriNet.

The clerk of the court is directed to terminate the motion. (Docket No. 26).


Dated:  November _14_, 2013

       White Plains, New York

                      SO ORDERED:

                                       _____ 11/14/13

                                    NELSON S. ROMÁN

                               United States District Judge