UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BRIDGET M. CURRAN, individually, and as
natural Guardian of C.F.C., a minor,

             Plaintiff,                             13-cv-00289 (NSR)
-against-                                     OPINION AND ORDER

AETNA LIFE INSURANCE COMPANY,
TRINET GROUP, INC., and THE TRINET
OPEN ACCESS MANAGED CHOICE PLAN

             Defendants.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

Bridget M. Curran brings this action on behalf of herself individually and as the natural guardian of her son, C.F.C., a minor ("Plaintiffs") against Defendants Aetna Life Insurance Company ("Aetna"), TriNet Group, Inc. ("TriNet"), and the TriNet Open Access Managed Choice Plan (the "Plan") (collectively, "Defendants"). On August 2, 2013, Plaintiffs filed an Amended Complaint as a matter of course. Before the Court is Plaintiffs' request to file a Second Amended Complaint. For the following reasons, Plaintiffs' motion is GRANTED in part and DENIED in part.

I.     Background

The Court assumes general familiarity with the facts of this case, which are set forth in greater detail in this court's Opinion & Order issued on November 11, 2013. To summarize, Plaintiff Bridget Curran was a member-participant and an insured under the Plan, as was her son, C.F.C., a minor. Aetna is the underwriter, insurer, and agent of the Plan and TriNet is the issuer and administrator of the Plan. On January 7, 2011, Plaintiff's minor son, C.F.C., underwent scoliosis surgery, which was performed by Dr. Rudolph F. Taddonio, an out-of-network health

1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/12/2014

care provider. Dr. Taddonio submitted a Claim Form to Aetna following the surgery in the amount of $168,500. Beginning in April 2011, and until September 2011, Aetna's website indicated under that it had approved a payment of $119,658.42 for the scoliosis surgery and that such amount was to be "Paid by Plan." Dr. Taddonio ultimately received a total payment of $4,443.99 from Aetna, which was made in two installments: $2,988.70 was paid on March 10, 2011 and $1,455.29 was paid on December 26, 2011. On May 31, 2011, Aetna notified Plaintiff by letter that it had made an error in approving the payment of $119,658.42 and that a new case number was assigned to the claim.

Plaintiff submitted numerous letters to Aetna and TriNet in which she requested documentation relating to the claim approval and subsequent denial. Plaintiff specifically requested the documentation relating to the adverse determination. TriNet's response indicated that TriNet was not the claims fiduciary and that it had delegated all claims administration to Aetna, its insurance carrier.

The Plan terms and coverage information is contained in a Booklet-Certificate. Plaintiff was provided the Booklet-Certificate by TriNet. Together with "Additional Information," the Booklet-Certificate constituted the Summary Plan Description ("SPD").

## II.      Procedural History

On January 14, 2013, Plaintiffs filed a Complaint against Aetna, TriNet, and the Plan. Defendants filed a motion to dismiss on May 8, 2013. That motion to dismiss was denied without prejudice by the Honorable Judge Karas for failure to comply with the court's individual practices. The case was then reassigned to the undersigned on July 25, 2013. On July 30, 2013, the parties participated in a pre-motion conference during which Defendants' proposed motion to dismiss was substantively discussed. Subsequently, before Defendants filed their motion to

dismiss, Plaintiffs filed an Amended Complaint on August 2, 2013 ("First Amended Complaint" or "FAC"). Defendants' motion to dismiss was filed on October 15, 2013. The Court issued its decision on November 11, 2013, which dismissed Plaintiffs' third and fourth claims and Plaintiffs' second claim to the extent that it sought statutory damages. Defendants answered the Amended Complaint on December 2, 2013. At a conference before this Court on December 5, 2013, Plaintiffs sought leave to file a motion to amend her Complaint for the second time. Plaintiffs' motion to file a Second Amended Complaint ("Proposed Second Amended Complaint" or "PSAC") was filed on February 21, 2014.

### III. Legal Standard for Motion to Amend

Under Fed. R. Civ. P. 15(a), a party may amend its pleading after a responsive pleading has been served "only by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). "[T]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court should grant leave to amend the complaint "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *In re Alcon Shareholder Litigation*, 719 F. Supp. 2d 280, 281-82 (S.D.N.Y. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "A proposed amendment is futile if the proposed claim could not withstand a 12(b)(6) motion to dismiss." *Fortune v. Grp. Long Term Disability Plan for Emps. of Keyspan Corp.*, 588 F. Supp. 2d 339, 341 (E.D.N.Y. 2008), *aff'd* 391 F. App'x 74, 80 (2d Cir. 2010) (citation omitted).

In this context, it is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 276

(S.D.N.Y. 1997). "Rather, plaintiffs have the responsibility to plead their case adequately, without defendants' or the Court's assistance." *Id*.

### IV. Discussion
#### a. Plaintiffs' Proposed Amended Second Cause of Action

Plaintiffs' Proposed Amended Complaint revises the second cause of action to assert statutory penalties under ERISA §502(c) pursuant to violations of ERISA §§ 502(a)(1)(B), 404(a)(1)(D), and 104(b)(4), which were not previously pleaded in either the Complaint or the First Amended Complaint. Plaintiffs' claim for relief for statutory penalties in the First Amended Complaint states as follows[1]:

> On the SECOND CLAIM, declaratory and Injunctive Mandamus Judgment against Defendants Aetna and TriNet for violation of Sections 503 and 505 of ERISA, 29 U.S.C. Sections 1133 and 1135 and Section 2560.503-1, U.S. Department of Labor Regulations; and an order and judgment, in the discretion of the District Court, imposing the penalties and fines against Defendants, severally and jointly, as prescribed by ERISA Section 502(c)(1), 29 U.S.C. Section 1132(c)(1).

FAC p. 10. In the Proposed Second Amended Complaint, the claim for relief states:

> On the SECOND CLAIM, declaratory and Injunctive (Mandamus) Order and Judgment against Defendants, severally and jointly, for enforcement of ERISA Sections 404(a)(1)(A), (B), and (D), 502(a)(1)(B), 503, 505, 29 U.S.C. Sections 1104(a)(1)(A), (B), and (D), 1132(a)(1)(B), 1133, and 1135; and 29 C.F.R. Section 2560.503-1, U.S. Department of Labor Regulations; and an order and judgment, in the discretion of the District Court, imposing the penalties and fines against defendant TriNet as Plan Administrator for violations of ERISA Sections 502(a)(1)(B), 404(a)(1)(D), and 104(b)(4), respectively, as determined by the District Court, pursuant to ERISA Section 502(c)(1)(B), 29 U.S.C. Section 1132(c)(1)(B).

PSAC p. 12. Defendants argue that the motion to amend should be denied under the law of the case doctrine and because the amendment is futile.

#### i. ERISA §§ 503, 505 and U.S. Department of Labor Regulation

---
[1] The claim for relief from the Original Complaint and the First Amended Complaint did not change.

"Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs., Inc.*, 949 F.2d 585, 592 (2d Cir. 1991). In this Court's Opinion & Order issued on November 15, 2013, the Court granted Defendants' motion to dismiss Plaintiffs' claim for statutory penalties under ERISA Section 502(c)(1)(B) for claimed violations of Sections 503 and 505 of ERISA and Department of Labor Regulation Section 2560.503-1. Plaintiffs may not continue to assert these violations as a basis for statutory penalties, as she proposes to do in her Second Amended Complaint. In fact, in her reply brief, Plaintiffs acknowledge that "this Court's prior ruling as to the imposition of Section 502(c) sanctions applies by its terms only to defendants' alleged violations of ERISA Sections 503 and 505." Reply Br. 5. Plaintiffs continue to assert these sections as a basis for imposition of sanctions, which is improper and contrary this Court's previous order. The Court has already dismissed such requests for relief, and therefore, Plaintiffs may not reassert them.

### ii.  Sanctions for Violations of "Enforce Your Rights" Provision

Plaintiffs' "new" request for statutory penalties, then, is based on violations of ERISA Sections 404(a)(1)(A), (B), and (D), 502(a)(1)(B), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), 1132(a)(1)(B). Plaintiffs propose to allege that Defendants were required to provide the requested documents under the "Enforce Your Rights" provision of the SPD and the refusal to do so was a violation of ERISA sections 502(a)(1)(B) and 404(a)(1)(D). Plaintiffs further claim that violation of these two sections subjects Defendants to statutory penalties under ERISA Section 502(c)(1)(B).

If the proposed claims would fail as a matter of law using the same standard as on a 12(b)(6) motion to dismiss, the Court must disallow the proposed amended complaint as futile. The PSAC seeks ERISA sanctions through different statutory vehicles than those alleged in the two previous complaints. The Court must again look to the language of Section 502(c), which provides for the possibility of sanctions:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). This section makes clear that a monetary penalty for failure to comply with the section may only be imposed where the administrator fails to comply with a request for information that the administrator is required to produce by ERISA. This means that only sections of ERISA falling within "sections 1001 through 1191c," *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180SASDFE, 2005 WL 1309056, at *2 (S.D.N.Y. May 31, 2005), which require the production of documents may be the basis for a court's consideration of statutory penalties.

Plaintiffs attempt to create a two-step path to the application of section 502(c): she argues that (1) because the Enforce Your Rights provision requires production of documents and (2) because Section 502(a)(1)(B) allows a participant to enforce his or her rights under a plan, a failure to produce documents under the Plan provision is a violation of an ERISA section which should allow for penalties. However, following Plaintiffs' argument would open up plan administrators to penalties any time there was a violation of an ERISA provision falling within

the relevant subchapter, which is not what the plan language of the penalty section provides. The Sections that Plaintiffs allege were violated by a failure to follow the Enforce Your Rights provision have nothing to do with the provision of documents to plan participants. Section 502(a)(1)(B) allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This section says nothing about producing documents. Similarly, section 404(a)(1)(D) requires plan fiduciaries to act "in accordance with the documents and instruments governing the plan . . . . [,]" but itself says nothing about the provision of documents. To extend the scope of section 502(c) to apply to sections that do not directly require the provision of documents could open up a plan administrator to penalties for violation of any section of ERISA. This is not what section 502(c) provides through its plain language and cannot have been the intention of Congress.

Turning to the "Enforce Your Rights" section itself, the language is required to be in each plan by the U.S. Department of Labor Regulations, as stated in 29 C.F.R. 2520.201-3(t)(2). The Court reiterates now what it stated in its November Opinion: violations of Department of Labor Regulations cannot give rise to statutory penalties. *See, e.g.*, *Curran v. Aetna Life Ins. Co.*, No. 13–cv–00289 (NSR), 2013 WL 6049121, at *5 (S.D.N.Y. Nov. 15, 2013); *Mohamed v. Sanofi-Aventis Pharmaceuticals*, No. 06 Civ. 1504, 2009 WL 4975260, at *21 (S.D.N.Y. Dec. 22, 2009).

### iii. Failure to Provide SPD

This Court stated in its November Opinion that "Plaintiff never specifically requested a copy of the SPD because Plaintiff was in possession of the SPD at all times," and that therefore "sanctions under § 502(c) cannot be predicated on the failure to provide the SPD." *Curran*, 2013

7

WL 6049121, at *4. Defendants state that this precludes Plaintiffs from pursuing sanctions for the failure to provide a copy of the SPD. As Plaintiffs note, the original complaint and the amended complaint are void of allegations that either Aetna or TriNet failed to provide a copy of the SPD. The complaints all state that Ms. Curran was issued the SPD. Complaint ¶ 17; FAC ¶ 17; PSAC ¶ 17. What Plaintiffs now argue is that it is irrelevant that Plaintiffs were in possession of the SPD because § 104(b)(4) allows a participant or beneficiary to request a copy of the SPD at any time. The Court agrees with Plaintiffs.

Under Section 104(b)(4) of ERISA, "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, [sic] plan description . . . ." 29 U.S.C. § 1024(b)(4). The same section of ERISA provides that the plan administrator must provide each plan participant and beneficiary a copy of the SPD within a certain amount of time that he or she becomes a participant or beneficiary. 29 U.S.C. § 1024(b)(1). Therefore, the sections would be contradictory if a plan administrator was not required, upon request, to provide a copy of the SPD to a participant or beneficiary who may already possess the SPD because theoretically, every participant or beneficiary should be in possession of the SPD by virtue of section 104(b)(1). Therefore, the failure to provide a copy of the SPD after a written request is made constitutes a violation of Section 104(b)(4), whether or not the requestor was previously provided a copy of the SPD.

The law of the case doctrine states that "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *see also Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) ("The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice"). The law of the case doctrine is, however, discretionary. *See Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." (internal quotation marks omitted)); 18B Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 4478, at 637 (2d ed. 2002) ("The courts are understandably reluctant to reopen a ruling once made. . . . Reluctance, however, does not equal lack of authority. The constraint is a matter of discretion. So long as the same case remains alive, there is power to alter or revoke earlier rulings."). Although Defendants assert that the Court has already made a definitive ruling with respect to Plaintiffs request for a copy of the SPD, the Court is now exercising its discretion to revisit its earlier ruling. This is especially so due to the fact that the PSAC now specifically alleges that Defendants failed to provide a copy of the SPD.

Defendants alternative argument is that Plaintiffs' request for the SPD was made to Aetna, not TriNet, and that therefore, the request was not properly made to the plan administrator. *See Giordano v. Thomson*, No. 03-CV-5672 JS AKT, 2007 WL 1580081, at *4 (E.D.N.Y. May 29, 2007) ("A plan administrator may not be held liable for requests directed to someone other than the administrator."). However, as Defendants admit, the letters Plaintiffs sent to Aetna were enclosed with a letter sent to TriNet on March 9, 2012. As the current procedural posture is analogous to a motion to dismiss under Rule 12(b)(6), the Court finds that Plaintiffs have adequately alleged that it requested a copy of the SPD to the plan administrator and was not provided with a copy. Therefore, Plaintiffs claim for statutory penalties under Section 502(c) of ERISA based on a failure to provide a copy of a document that the plan administrator was

required to produce under ERISA 104(b)(4) is not futile. Plaintiffs' motion to amend their complaint in accordance with this finding is granted.

### b. Plaintiff's Third and Fourth Causes of Action

"It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect. *See, e.g., Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999). However, we have not yet addressed whether there is a futility exception to this rule where a party fails to advance in a subsequent pleading a claim or defense that already has been rejected by the court. [Court points to a Circuit split on this issue]. We see no reason to require repleading of a claim or defense that explicitly has been denied." *In re Chrysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (holding that defendants' failure to include an arbitration defense in amended answers did not constitute an express waiver of the defense). Accordingly, it is not necessary for Plaintiffs to continue to assert these claims in order to preserve them.

## V. Conclusion

Based on the foregoing, Plaintiff's motion to amend is granted, in part. The Clerk of the Court is respectfully requested to terminate this motion, Docket No. 38.

Dated: May 12th, 2014
White Plains, New York

SO ORDERED:

_____ 5/12/14
NELSON S. ROMÁN
United States District Judge