UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

BRIDGET M. CURRAN, individually, and as          :
natural Guardian of C.F.C., a minor,             :
                                                 :
                           Plaintiff,            :          13-cv-00289 (NSR)
              -against-                           :          OPINION AND ORDER
                                                 :
AETNA LIFE INSURANCE COMPANY,                    :
TRINET GROUP, INC., and THE TRINET               :
OPEN ACCESS MANAGED CHOICE PLAN,                 :
                                                 :
                           Defendants.           :

-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

        Plaintiff Bridget M. Curran brings this action on behalf of herself individually and as the

natural guardian of her son, C.F.C., a minor, against Defendants Aetna Life Insurance Company

("Aetna"), TriNet Group, Inc. ("TriNet"), and the TriNet Open Access Managed Choice Plan

(the "Plan") (collectively, "Defendants"). Before the Court are Defendants' and Plaintiff's

Cross-Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. Plaintiff's Second Amended Complaint (the "Complaint") seeks (1) to recover

benefits due under the Plan pursuant to ERISA Section 502(a)(1)(B); (2) declaratory and

injunctive relief compelling Defendants to respond to Plaintiff's requests for documents pursuant

to ERISA Sections 502(c)(1)(B) and 104(b)(4); and (3) to impose statutory penalties on TriNet

pursuant to ERISA section 502(c)(1)(B) and 104(b)(4) for failure to provide the Summary Plan

Description (the "SPD").

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7 / 11 / 2016

1

## FACTUAL BACKGROUND[1]

Bridget M. Curran was a member-participant and an insured under the TriNet Open Access Managed Plan, as was her son, C.F.C., a minor.  (Exhibit 14 at 352.) [2] The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001, *et seq.* (Exhibit A at 183.) Aetna is the underwriter, insurer, and agent of the Plan, and TriNet is the issuer and administrator of the Plan. (*Id.* at 88, 158, 182.) Accordingly, AETNA is the claims fiduciary and performs all claim determinations and appeals. (Exhibit 9 at 355.) The Plan provides both in-network and out-of-network benefits, with different levels of benefits provided for the two categories of providers. (Exhibit A at 95, 197-209.)

Plaintiff's claims stem from a scoliosis surgery performed on her minor son, C.F.C., on January 7, 2011. (*See* Amend. Compl. ¶ 13.) The procedure was performed by Dr. Rudolph F. Taddonio. (Exhibit G at 130.) Prior to surgery, Plaintiff sought and received precertification for the procedure, and Dr. Taddonio was approved as an out-of-network health care provider. (*Id.* at 133.) Precertification is required by the Plan when receiving services from an out-of-network provider, and the Plan encourages the use of in-network providers in order to save on costs. (Exhibit A at 96, 98-100.) Additionally, the Plan outlines the details of cost sharing for out-of-network providers and explains that the insured will be responsible for any expenses above the "recognized charge." (*Id.* at 98.) The recognized charge is defined as the lowest of (1) the

---

[1] The facts relating to the cross motions are undisputed as set forth in the administrative record. Plaintiff and Defendants additionally submit Statements of Material Facts pursuant to Local Rule 56.1. The Court's review, however, is limited to the administrative record (*see* Memorandum and Order, ECF No. 72), and the Court therefore looks to the administrative record for the undisputed material facts. *See Coal. for Healthy Ports v. United States Coast Guard*, No. 13-CV-5347 (RA), 2015 WL 7460018, at *5 (S.D.N.Y. Nov. 24, 2015). To the extent the parties dispute facts from the administrative record in their additional submissions, those disputes are noted above.

[2] Page numbers refer to Bates Numbers and are preceded in the record by "CURRAN-AETNA000." Defendants' exhibits are identified with letters and can be found at ECF Nos. 86 and 87. Plaintiff's exhibits are identified with numbers and are at ECF No. 91.

provider's usual charge for furnishing a service or (2) the charge Aetna determines to be appropriate, based on factors such as the cost of providing the same or similar service in the same manner. (*Id.* at 174.)

Following the surgery, Dr. Taddonio submitted a claim to Aetna, which Aetna approved and paid in the amount of $2,988.70. (Exhibit H at 214.) As a result, Dr. Taddiono billed Plaintiff for the remaining expenses, in the range of $167,000. (Exhibit J at 152.) On April 7, 2011, Plaintiff submitted a first-level appeal of Aetna's benefit determination, questioning a number of Aetna's decisions as to the levels and reasonableness of covered expenses. (Exhibit J.) On May 10, Aetna's Complaint and Appeals Tracking System ("CATS") case comments lists that Plaintiff's claim was overturned and that Dr. Taddiono's claim should be processed in accordance with Aetna's balance billing policy. (Exhibit 9.) The balance billing policy allows for greater benefits to be paid to an out-of-network provider authorized as in-network for a particular service or procedure. (Exhibit M; Exhibit 7.) In accordance with the CATS determination, on May 10, 2011, the Complaint and Appeal Analyst—Robert Gallion—drafted a letter to Plaintiff, informing her that Aetna was reversing its previous decision and allowing additional benefits for the surgery. (Exhibit 14) The draft letter, however, was never sent, and on May 13, 2011, Sherry Kelsch—Aetna Claims and Benefits Specialist—clarified that the provider (Dr. Taddiono) was out-of-network, approved as out-of-network for the procedure, and is to be paid at the lower benefit level. (Exhibit 7 at 971.)

Later in May, Melynda Sidwell—a claims quality analyst—submitted a question to Aetna's internal resolution center with regards to the balance billing issue. (Exhibit 12 at 972.) Specifically, Ms. Sidwell wrote:

> CATS has instructed the processor the [sic] pay per the balance billing policy. Per the policy the claim would have be [sic] reimbursed as preferred for the policy to be applied, however, in the past processors have been instructed to follow the CATS decision and were not allowed to question those directions. Can processors refer claims back to the CATS team to question handling a decision if it's directly in conflict with a known policy.

(*Id.*) In response, the resolution center explained that:

> Normally, we do not question the CATS determination; however, after reading the case and seeing that information in e.Policies was cited as the basis on which they made their decision to overturn, I agree you may want to contact Appeals to discuss. I doubt that we can rescind an appeal decision once it has been rendered, but it could be of benefit to discuss this case with Appeals. At the least, it could be an education opportunity.

(*Id.*). Accordingly, Ms. Sidwell initiated an email exchange regarding the incorrect CATS decision. (Exhibit O; Exhibit 18.) Writing to Mr. Gallion and other members of the customer resolutions team, Ms. Sidwell explained:

> [T]his claim should never have been overturned. As stated in policy response normally we don't question a CATS appeal, but they don't normally contradict policy resulting in such a high dollar error. The services must be authorized as PAR to be non-preferred providers as par.[3] This is not a situation where the balance billing policy applies. Is this a decision that should be or even can be rescinded?

(*Id.* at 544.) The emails that followed confirmed that the initial overturn was done in error; that the entire case/claim required a number of corrections, "which is why it seems best to start all over" with a new case number; and that a new letter should be drafted and sent to the insured. (*Id.* at 541-43.) As a result, on May 31, 2011, Mr. Gallion drafted and sent a new letter to Plaintiff, indicating that an error was made in the initial appeal and the case was being reviewed

---

[3] "PAR" refers to "participating," which appears to be the term Aetna uses for an out-of-network provider that is approved as in-network for a particular procedure or service.

under a new case number. (Exhibit 16 at 351.) On June 16, 2011, Mr. Gallion drafted and sent a final determination letter, advising Plaintiff in detail of the results of her appeal—mainly, that the original decision was correct and Aetna owes no further benefits. (Exhibit P at 342-43.)

Thereafter, Plaintiff—through counsel—submitted a second-level appeal challenging the adverse benefit determination and requested copies of all documents related to the first appeal determination. (Exhibit 23; Exhibit Q.) In support of her second-level appeal, Plaintiff attached a screen shot of her online summary of claims from June 27, 2011. (Exhibit 13; Exhibit R.) The summary of claims includes Dr. Taddonio's claim, dated 1/07/2011, and lists the amount "Paid by Plan" as $119,658.42 and the claim status as "In Progress." (*Id.* at 472.) The "Claim Details" page explains that claims that are "In Progress" have dollar amounts that are subject to change, and Aetna's online chat help representative confirmed that "in progress" refers to claims that "are not complete, [meaning Aetna has] received the claim but ha[s] not made a decision." (*Id.* at 473; Exhibit S at 743.)

On October 13, 2011, Aetna responded to Plaintiff's request for documents and provided a copy of all documents relied upon in making the first appeal determination. (Exhibit T.) Additionally, on October 28, 2011, Aetna sent a letter to Plaintiff explaining its final appeal determination as to Plaintiff's second-level appeal. (Exhibit U.) The letter, written by Mickey Salas—a Complaint and Appeals Analyst—identifies all documents reviewed and all plan provisions relied upon in making the final decision and explains Aetna's basis for the decision. (*Id.*) The correspondence additionally notes that a new analyst, who was not involved in any prior reviews of the claim, participated in the final appeal. (*Id.* at 924.) Plaintiff contends that this determination ignores and does not take into account the initial CATS determination or the unsent May 10, 2011 instruction from Mr. Gallion. (Pl.'s 56.1, ECF No. 96, ¶ 24.) On the other

5

hand, Defendants assert that the benefits decision was made after taking into account both the May 10 guidance and additional clarifications received in making the final June 16 determination. (Defs.' Response, ECF No. 95, ¶ 24.)

In addition, throughout the appeals process, Plaintiff sent letters through counsel to Aetna on April 7, 2011, July 7, 2011, September 26, 2011, October 28, 2011, November 15, 2011, November 28, 2011, and January 7, 2012, and to TriNet on March 9, 2012 and May 22, 2012. (Exhibit X.) The letters sent to TriNet also requested specific documentation with regard to the adverse determination of the claim. (*Id.*)   TriNet's response, on July 16, 2012, indicated that TriNet was not the claims fiduciary and that it had delegated all claims administration to Aetna, its insurance carrier.  (*Id.* at CURRAN-TRINET000041.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F.

App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light

most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor."

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh

the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.

*Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of

determining whether there is the need for a trial." *Id.* at 250.

       Summary judgment should be granted when a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is

genuinely disputed must support their assertion by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence . . . of a genuine

dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with

conclusions, are insufficient to defeat a properly supported motion for summary judgment."

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not

rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607

F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-

moving party's] self-serving statement, without direct or circumstantial evidence to support the

charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust &*

*Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008)

*aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d

342, 353 (S.D.N.Y. 2003)).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir.2011)); *see also Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001) ("[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.") (citation omitted). The Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment. *Morales*, 249 F.3d at 121.

## DISCUSSION

I.   *Recovery of Plan Benefits pursuant to ERISA § 502(a)(1)(B)*

Plaintiff's first claim seeks to recover $119,658.42 in plan benefits in payment to Dr. Taddonio for the January 7, 2011 procedure.

a.   *Standard on Review of ERISA Administrator's Determination*

Generally, an administrator's decision to deny benefits is reviewed *de novo*; however, where written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, a court should not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009) (internal quotation marks omitted). In the instant case, the parties agree that the administrative decision is subject to review under the arbitrary and capricious standard, because the Plan confers discretionary authority on Aetna to make claim determinations. Under the "arbitrary and capricious" standard, courts will overturn a fiduciary's denial of benefits "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miles v. Principal*

8

*Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013) (internal quotation marks omitted). "[W]here the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Id.* (quoting *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) (internal quotations omitted)). Further, where, by their interpretation, the trustees of a plan "render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir. 1983). "This standard is 'highly deferential,' and 'the scope of judicial review is narrow.'" *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 211 (2d Cir. 2015) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003)).

     b.  *Conflict of Interest Factor*[4]

     When an administrator both evaluates and pays benefits claims, a court "must take [the conflict] into account and weigh [it] as a factor in determining whether there was an abuse of

---

[4] In its motion for summary judgment, Plaintiff makes a separate argument—and devotes five pages to support—that Defendants breach their fiduciary obligations to Plaintiff. The Court previously heard and disposed of this claim as duplicative of Plaintiff's first claim to recover benefits and overturn the "adverse" determination:

> Plaintiff's argument for breach of fiduciary duties is that Aetna was in a conflict of interest position by determining the "recognized charge" for the surgery as $119,658.42 and then rescinding that determination in favor of a lower payment of $4,443.99. This claim is essentially that Aetna erred in its claim determination. Because it is essentially duplicative of her First Claim, and because there is other relief available for this claim under the statute other than the equitable relief available under § 502(a)(3), Plaintiff's Third Claim should be dismissed.

*Curran v. Aetna Life Ins. Co.*, No. 13-CV-00289 NSR, 2013 WL 6049121, at *8 (S.D.N.Y. Nov. 15, 2013). Therefore, the Court will not consider the breach of fiduciary argument as a separate claim. The only claim before the Court is whether or not Plaintiff can recover plan benefits. In deciding this issue, the Court must review whether the decision of Defendants with regards to Plaintiff's claim was arbitrary and capricious, and in so deciding, the Court will weigh any conflict of interest that may exist.

discretion ....." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008). *See also*

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (quoting Restatement (Second)

of Trusts § 187 cmt. d (1959)) (alterations omitted) (Where a plan administrator has a conflict of

interest, "that conflict must be weighed as a 'factor in determining whether there is an abuse of

discretion.'"). A conflict of interest is included as one of several different factors that a

reviewing judge must take into account when reviewing a denial of benefits and its weight is in

proportion with the "likelihood that [the conflict] affected the benefits decision." *Durakovic v.*

*Bldg. Serv. 32 BJ Pension Fund,* 609 F.3d 133, 139-40 (2d Cir. 2010) (alteration in original)

(internal citations omitted). Accordingly, "[n]o weight is given to a conflict in the absence of any

evidence that the conflict actually affected the administrator's decision." *Id.* at 140. Evidence or

circumstances demonstrating that the conflict did *not* affect the administrator's decision include

"active steps [taken] to reduce potential bias and to promote accuracy, for example, by walling

off claims administrators from those interested in firm finances, or by imposing management

checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits."

*Glenn*, 554 U.S. at 117.

    Here, it appears as though Aetna is both the administrator and payor of claims, and thus,

a structural conflict of interest exists. *See Metropolitan Life Insurance Co. v. Glenn*, 554 U.S.

105, 112 (2008). The question for the Court to determine, then, is whether this conflict affected

Aetna's benefits determination.

    Plaintiff has not submitted evidence to demonstrate any "indicia of conflicted

decisionmaking that *[courts] have found in prior cases.*" *Caban v. Employee Sec. Fund of the*

*Elec. Products Indus. Pension Plan*, 629 F. App'x 139, 142 (2d Cir. 2015), *cert. denied sub nom.*

*Caban v. Employee Sec. Fund of Elec. Products Indus. Pension Plan.*, 136 S. Ct. 1521 (2016)

(emphasis added) (internal citations omitted). Specifically, in prior cases, courts have found indicia of conflicted decisionmaking where the administrator "summarily dismissed" the claimant's expert report, "which was vastly more detailed and particularized than the report on which the Funds relied," *Durakovic,* 609 F.3d at 140; where the administrator refused to consider the claimant's evidence of his disability, giving an "unreasonable and deceptive" explanation for its decision, *McCauley,* 551 F.3d at 135-36; and where an irrational decision was reached or a one-sided decisionmaking process was utilized, *Roganti v. Metro. Life Ins. Co*., 786 F.3d 201, 218 (2d Cir. 2015). In the instant case, Plaintiff has not submitted any such evidence.

Plaintiff contends, however, that Ms. Sidwell's statements in her May 31, 2011 email that "[w]e are questioning the validity of the appeal instructions as they have resulted in a prepay error of over $100,000" and that "[p]rocessors have always been instructed to follow CATS without question, but in this case it's hard to justify" nevertheless evidences that Aetna was influenced by the conflict of interest.[5] (Plaintiffs' Memorandum in Support of Plaintiffs' Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opposition"), at 16.) Plaintiff asserts that this "unambiguously demonstrates" that "Aetna's 'averting' decision was motivated and prompted by its self-interest in not paying more than $100,000 to [an out-of-network] provider." (*Id.* at 17.) Because Aetna is also the payor of the claims and therefore any error leading to an increase in benefits would come out of its own pocket, these statements do tend to show that the conflict may have affected the benefits

---

[5] Plaintiff additionally contends that the statement of "Aetna's Lauana Autery, a member of Aetna's Customer Resolution Team" that "Dr. Taddonio terminated from our networks on 9/15/02" also demonstrates that Aetna's determination was affected by the conflict. (Pl.'s Opposition at 16.) It is entirely unclear how Autery's statement supports that conclusion, and the Court is not persuaded that this evidences any conflicted decisionmaking.

determination. *See Glenn,* 554 U.S. at 112 ("every dollar saved ... is a dollar in [the administrator's] pocket").

On the other hand, although Defendants have not submitted evidence outside the administrative record as to any efforts to reduce the risk of conflicted decisionmaking, it is clear from the administrative record that Aetna assigned separate individuals to process each level of appeal, which "[c]ourts have typically credited … as signaling an effort to reduce potential bias and promote accuracy." *S.M. v. Oxford Health Plans (N.Y.), Inc.,* 94 F. Supp. 3d 481, 500 (S.D.N.Y. 2015), *aff'd sub nom. S.M. v. Oxford Health Plans (N.Y.),* No. 15-1234, 2016 WL 1168734 (2d Cir. Mar. 25, 2016) (internal citations omitted). Additionally, the record contains no evidence that Aetna ignored any relevant information submitted to it by Plaintiff or Dr. Taddonio or that Aetna's decision was in any way irrational. In fact, Defendants have provided evidence that conclusively demonstrates that Aetna's decision was in accordance with the explicit plan terms, and its explanation is neither unreasonable nor deceptive. (*See Miles*, 720 F.3d at 485; *McCauley,* 551 F.3d at 135-36).

Finally, this case does not present a determination based on a factual dispute, such as whether a procedure was medically necessary or whether a person qualifies as totally disabled. *See, e.g.*, *S.M. v. Oxford Health Plans (N.Y.), Inc.,* 94 F. Supp. 3d at 481; *Durakovic,* 609 F.3d at 133. Instead, Plaintiff questions the determination that the balance billing policy does not apply to her claim. The balance billing policy only applies to providers that are *authorized as in-network* for a particular service or procedure, and it is clear that Dr. Taddonio was not authorized as in-network for the January 7, 2011 surgery. (Exhibit M; Exhibit 7.) In other words, whether Dr. Taddonio was authorized as in-network is not a question open to interpretation but is specifically documented in Aetna's records, in contrast to the question of whether a procedure is

12

medically necessary. Accordingly, there is little room for the conflict to affect the benefits decision.

Therefore, although a structural conflict of interest exists, in light of the procedural safeguards in place, the Court will afford little weight to the conflict factor in assessing whether the determination was arbitrary or capricious. *See Glenn,* 554 U.S. at 118; *Durakovic,* 609 F.3d at 140.

              *c.  Aetna's Determination was neither Arbitrary nor Capricious*

In conducting an arbitrary and capricious review, "[a] court may overturn a plan administrator's decision to deny benefits only if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks omitted). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Id*. (brackets, ellipsis, and internal quotation marks omitted).

After a review of the record, the Court finds that Aetna's benefit determination was supported by substantial evidence and was not an abuse of discretion.

The crux of Plaintiff's argument that the decision was arbitrary and capricious is that (1) the initial determination—that Plaintiff was owed additional benefits—was procedurally legitimate and authorized per Aetna's balance billing policy, (2) the subsequent correction is "an anomaly that does not comport with the prescribed procedure followed by the subject Plan to obtain a resolution of a contested (adverse) claim determination," and therefore (3) the irregular procedure did not validly revoke the initial determination and, accordingly, it remains enforceable and irreversible. (Pl.'s Opposition at 10-14.)

13

Plaintiff's argument, however, falls apart at the first step—the record makes clear that the additional benefits were *not* authorized per Aetna's balance billing policy. Plaintiff, in support of her argument, quotes the balance billing policy: "Due to our obligation to hold our members harmless from further charges, allow billed charges…" (Pl.'s Opposition at 12.) Conveniently, Plaintiff omits the relevant, controlling portion of the policy, which states that a provider must be authorized as in-network to be entitled to further benefits. (Exhibit 7.) Prior to the surgery, Dr. Taddonio was explicitly approved as *an out-of-network* health care provider. (Exhibit G at 133.) There is no evidence anywhere in the record, nor does Plaintiff argue, that Dr. Taddonio was ever authorized as an in-network provider for this surgery. Therefore, it is clear that Dr. Taddonio's charges are not covered by the balance billing policy, and the initial CATS determination was generated in error. In fact, Ms. Sidwell's May 31, 2011 email makes clear that the CATS determination contradicts Plaintiff's policy, and that this "is not a situation where the balance billing policy applies." (Exhibit O at 544.) Accordingly, the decision to overturn was made in a manner *consistent* with the Plan provisions, and even when taking into account the slight conflict of interest factor, the final determination is not arbitrary or capricious. *See Miles,* 720 F.3d at 485 (internal citations omitted).

Plaintiff contends that the "validity of the [benefits] computation … is not an issue in this litigation. The only justiciable claim … is plaintiffs' entitlement under ERISA Section 502(a)(1)(B) to the additional payment authorized and approved by Appeals Instructions on May 10, 2011 for payment to Dr. Taddonio under Aetna's balance-billing policy."[6] (Pl.'s Opposition

---

[6] Plaintiff does not dispute the validity of the benefits computation (i.e., that two separate payments of $2,988.70 and $1,455.29, were correctly calculated according to the Plan's terms). (*See* Pl.'s Opposition at 22.) Instead, Plaintiff claims that the additional payment of $119,658.42 was authorized and approved, and therefore, Plaintiff is entitled to it.

at 22.) This argument, however, is inapt, as ERISA § 502(a)(1)(B) only provides for a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Thus, Plaintiff is limited to the enumerated remedies and can only recover benefits or rights granted to her by the Plan. As the Court already established, the balance billing policy does not apply to Dr. Taddonio's claims and therefore Plaintiff is not entitled to any payment under that policy.

In an effort to bring her claim within the enumerated remedies of § 502(a)(1)(B), Plaintiff asserts that the additional payment of $119,658.42 was authorized and approved, and therefore, Plaintiff is entitled to it. (Plaintiffs' Reply Memorandum in Support of Plaintiffs' Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 93, at 5.) As support for this argument, Plaintiff submits two pieces of evidence. First, she submits a screenshot of her Claims Listing page of Aetna's online portal, which lists the amount "Paid by Plan" for the January 7 claim of Dr. Taddonio as $119,658.42. (Exhibit 13.) However, this is not a guarantee or formal approval of benefits, which was clearly communicated to Plaintiff through both the "Claim Details" page, which explains that claims that are "In Progress" have dollar amounts that are subject to change, and Aetna's online chat help representative, who confirmed that "in progress" refers to claims that "are not complete, [meaning Aetna has] received the claim but ha[s] not made a decision." (*Id.* at 473; Exhibit S at 743.)

Second, Plaintiff submits screenshots of Aetna's internal "Electronic Workflow Event Detail," which track the resolution of Plaintiff's claim. (Exhibit 15.) The first three screens show Plaintiff's claim as of May 10 and detail that the claim should be reprocessed and allowed in

15

accordance with the balance billing policy. However, Plaintiff artfully omits the fourth screen, which, as of May 13, details that Plaintiff's claim is to be paid at the lower benefits level because the provider is non-participating and out-of-network.[7] (Exhibit L at 971.) Thus, this evidence also does not support Plaintiff's theory that the additional payment was authorized and approved, as it is clear that the initial determination was quickly identified as incorrect and overturned.

In essence, therefore, Plaintiff argues that Aetna is not permitted to correct an erroneous determination.[8] This, however, is surely not the intention or effect of § 502(a)(1)(B), and as outlined above, Plaintiff is not entitled to any greater benefit under the terms of her Plan. Accordingly, the Court grants summary judgment for Defendants on Plaintiff's first claim.

## II. *Injunctive and Declaratory Relief Compelling Defendants to Produce Plan Documents*

Plaintiff's second claim seeks injunctive and declaratory relief compelling Defendants to respond to Plaintiff's requests for documents relating to Plaintiff's claim for coverage under the Plan. In support of this claim, Plaintiff alleges that Defendants engaged in a "pattern of dilatory and stonewalling tactics" and details the numerous letters she sent that Defendants did not

---

[7] The Court notes that, on numerous occasions throughout the record, Plaintiff omits relevant documents or pages and therefore fails to present a complete record to the Court. This Court expects candor from counsel and parties that appear before it, and it does not condone attempts to conceal or camouflage material facts pertinent to pending matters. *See In re Dinova*, 212 B.R. 437, 447 (B.A.P. 2d Cir. 1997) ("Attorneys appearing before a federal court are its officers. As such, they owe a primary duty to the administration of justice. They owe the court and the public duties of good faith and complete candor in dealing with the judiciary. … To fulfill such requirements, attorneys must ensure that they bring all conditions and circumstances that are relevant in a given case directly before the court.")

[8] Plaintiff additionally argues that she is entitled to the additional payment because the determination of that payment was determined according to "legitimate procedures," and it "has not been revoked, recalled, or set aside by any valid countermanding authority, declaring null and void the May 10, 2011 Appeals Instructions and CATS Decision." (Pl.'s Opposition at 10, 12-14.) As noted above, however, the May 10 decision was not in accordance with the Plan, and Plaintiff therefore has no right to the additional benefits. Moreover, the Plan states that Aetna "[has] the right to adopt reasonable policies, procedures, rules, and interpretations of this Policy to promote orderly and efficient administration."(Exhibit A at 81.) Thus, if Aetna used a new or different procedure to arrive at the correct determination of benefits, such action was authorized under the Plan.

adequately respond to. (Pl.'s Reply at 12.) Plaintiff does not, however, argue that any remaining documents have not been produced. In fact, Plaintiff admits that the final requested documents were turned over, albeit late, and stated in front of this Court on April 2, 2015 that discovery was complete. (Pl.'s Opposition at 24.) At this point, according to both parties,[9] all Plan and claim documents have been produced. Therefore, the Court is unable to provide any declaratory relief compelling production of further documentation.

III.    *Statutory Penalties against TriNet pursuant to ERISA §§ 502(c) and 104(b)(4)*

Plaintiff's third and final claim seeks statutory penalties against TriNet—the Plan Administrator—for failing to produce the SPD upon request.

Plaintiff's memoranda of law do not include any legal argument in support of her third claim. Instead, Plaintiff requests that the Court incorporate the July 13 attorney declaration submitted in support of her cross-motion for summary judgment. (ECF No. 91.) However, "declarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, [] not to advance factual averments or legal arguments." *Clark v. Kitt*, No. 12-CV-8061 CS, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) (citing H.B. v. Monroe Woodbury Cent. Sch. Dist., No. 11–CV–5881, 2012 WL 4477552, at *5 (S.D.N.Y. Sept. 27, 2012)). Accordingly, inclusion of legal arguments in an attorney declaration is improper. *See Genometrica Research Inc. v. Gorbovitski,* No. 11-CV-05802 ADS AKT, 2013 WL 394892, at *4 (E.D.N.Y. Jan. 31, 2013) (holding that the court will not consider any legal arguments contained in attorney declarations because inclusion of legal arguments in declarations is improper). Moreover, it is clear to the

---

[9] Plaintiff admits that Defendants have made the relevant disclosures: "[D]efendants carried out a pattern of resistance and stonewalling until finally forced to make disclosure under Magistrate Davison's production Order of December 8, 2014." (Pl.'s Reply at 12.)

Court that this is a thinly-veiled attempt to supplement Plaintiff's twenty-five page memorandum of law with more pages of legal argument than the Court's Individual Rules and Practices allow absent leave of Court. The Court will not tolerate such a blatant attempt to circumvent the rules. Therefore, the Court disregards all arguments presented in Curran's declaration but notes that none of those arguments would change the Court's analysis or decision. *See Avalos v. IAC/Interactivecorp.*, No. 13-CV-8351 JMF, 2014 WL 5493242, at *3 (S.D.N.Y. Oct. 30, 2014) (disregarding all arguments presented in attorney declaration for similar reasons). *See also Zaldivar v. JMJ Caterers, Inc.,* No. CV14924SJFAKT, 2016 WL 792404, at *5 (E.D.N.Y. Feb. 26, 2016) (same).

Plaintiff's third claim seeks statutory penalties pursuant to ERISA Section 502(c)(1)(B), which provides that "[a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant ... within 30 days after such request may in the court's discretion be personally liable to such participant ... in the amount of up to $100 a day from the date of such failure or refusal." ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B). In assessing a claim for penalties, the Court should consider "various factors, including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 90 (2d Cir.2001) (internal quotation marks omitted).

In light of these factors, the Court declines to impose penalties on TriNet for failure to produce the SPD. As an initial matter, though Defendants argue that Plaintiff's request for the SPD was directed to the wrong entity, it is clear that Plaintiff's March 9, 2012 letter to TriNet incorporated the request and therefore Plaintiff requested the SPD from TriNet. (Exhibit X at

18

CURRAN-TRINET000020.) However, this request was buried in over 25 pages of letters forwarded to TriNet as attachments to Plaintiff's first direct letter to TriNet. (Exhibit X.) TriNet responded to this letter and all other communications from Plaintiff. (*Id.*) Plaintiff has not provided any evidence of bad faith on behalf of TriNet. In light of the inconspicuous request and TriNet's general responsiveness to Plaintiff's letters, the Court does not find that TriNet acted in bad faith or irresponsibly in failing to produce the requested document. *See Cherry v. Toussaint,* No. 01 CIV. 6726 (NRB), 2003 WL 21767759, at \*5 (S.D.N.Y. July 30, 2003), *aff'd,* 126 F. App'x 496 (2d Cir. 2005) ("The penalty is designed more to punish irresponsible ERISA administrators and fiduciaries than to compensate the pensioner for an actual loss.") (internal citations and alterations omitted).

Additionally, although the length of delay until Plaintiff received a copy of the SPD is substantial, Plaintiff only made one request to TriNet for the document. *Cf. Pagovich v. Moskowitz*, 865 F. Supp. 130, 138 (S.D.N.Y. 1994) (awarding penalties where Plaintiff made numerous unanswered requests*). See also Campanella v. Mason Tenders' Dist. Council Pension Plan,* 299 F. Supp. 2d 274, 293 (S.D.N.Y. 2004), *aff'd sub nom. Campanella v. Mason Tender's Dist. Council Pension Plan*, 132 F. App'x 855 (2d Cir. 2005).

Finally, Plaintiff has not alleged that she suffered any prejudice as a result of TriNet not producing the SPD. In fact, Plaintiff was in possession of the SPD despite her request for a copy and she therefore had all the information that was necessary from the SPD to support her claims. (Complaint, ¶ 17.) *See Armstrong v. Liberty Mut. Life Assur. Co. of Boston*, 273 F. Supp. 2d 395, 410 (S.D.N.Y. 2003), *decision supplemented sub nom. Armstrong v. Liberty Mut. Life Assur. Co.*, No. 02 CIV. 2450 (CM), 2004 WL 540273 (S.D.N.Y. Feb. 25, 2004) (holding that plaintiff was not prejudiced where plaintiff was already in possession of documents requested).

Accordingly, based on Plaintiff's single request, TriNet's general responsiveness and absence of bad faith, and lack of prejudice to Plaintiff, the Court will not award penalties pursuant to ERISA § 502(c)(1)(B).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment on all of Plaintiff's claims and DENIES Plaintiff's motion in its entirety. Accordingly, the Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 81 and 82 and to enter judgment in favor of Defendants.

Dated:   July 11, 2016                                    SO ORDERED:
         White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                          United States District Judge

20